RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 5/13/11

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

STEPHEN R. LINZAY

VERSUS

UNITED STATES OF AMERICA obo
UNITED STATES POSTAL SERVICE

CIVIL CASE NO. 1:09-00617

JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION

Before the court is a "mixed case appeal"[1] from the Merit Systems Protection Board (MSPB) filed on April 14, 2010 by Stephen R. Linzay (Linzay) against the United State of America on behalf of the United States Postal Service (Postal Service) (Doc. 1). Linzay asserts a claim for discrimination on the basis of race, color and sex and in retaliation for prior protected activity pursuant to Title VII of the Civil Rights Act of 1964 as amended by 42 U.S.C. §2000(e), et seq. Linzay also seeks review of the MSPB's decision with respect to his non-discriminatory claims.

In response, the Postal Service filed a motion for summary judgment on October 19, 2009 (Doc. 5). However, a determination was made that the administrative record was incomplete so consideration of the motion would be stayed until a complete record could be filed. On November 30, 2010, the Postal Service filed a motion seeking leave to substitute and strike its motion for

---

[1] A mixed case appeal is one which involves both discrimination and non-discrimination claims and can be reviewed by a Federal District Court rather than the Federal Circuit. 5 U.S.C. §7703, 42 U.S.C. §2000(e)-16.

summary judgment (Doc. 35). The motion was granted and the new motion for summary judgment was filed December 1, 2010 (Doc. 37). A memorandum in opposition was filed by Linzay on January 28, 2011 (Doc. 41) and reply thereto was filed by the Postal Service on February 18, 2011 (Doc. 44). The motion, opposition and reply are currently before me for report and recommendation.

## Facts

Linzay began working for the Postal Service at the Alexandria Post Office, Alexandria, Louisiana on March 18, 1995 (R. 912). During his 12 years there, he performed work in the positions of Mail Handler, Temporary Supervisor and Union Shop Steward (R. 913).

On May 12, 2005, he received a Letter of Warning for improper conduct because he ignored a request from his supervisor. It was noted that during discussions regarding his insubordination, Linzay became verbally abusive, was degrading, used racially offensive comments and was disrespectful to another supervisor (R. 128). Linzay was warned that his improper conduct and insubordination must cease immediately (R. 128-130).

On December 5, 2005, Linzay was suspended for seven days with pay because he was loud and abusive toward another employee. Noted in the notice of suspension was the fact Linzay had previously received a warning and further deficiencies would result in more severe disciplinary action including suspension or removal (R.125).

Linzay was again suspended on February 14, 2006 for improper

conduct occurring on January 6, 2006. According to the notice of suspension, Linzay wrote "PASS" on a work schedule which could only be done by a manager. His action resulted in his supervisor finding another person to fill the position and both Linzay and his substitute showed up for work. During an investigation into the matter, Linzay left the room and returned stating he had clocked out. Accordingly, he was told to leave the building. Linzay ignored repeated requests to leave the building and ultimately became physical and had to be escorted out. Though Linzay was initially suspended for 14 days, the suspension was reduced to 10 days via a pre-arbitration agreement (R. 119-121).

On December 28, 2006, Linzay filed a formal complaint with the EEOC regarding claims of discrimination and a complaint that the Postal Service forced him off of the clock on October 8, 2006 and would not allow him to return to work until he submitted to a medical examination.[2] A hearing was held and the Administrative Judge (EEOC AJ) issued a "Decision After Hearing" which denied the discrimination claims but found the Postal Service violated sections 501 and 505 of the Rehabilitation Act of 1973, as amended (R. 454-467). The EEOC AJ ordered payment of benefits and backpay with interest, EEO training for managers, a review of the policies concerning medical clearances, consideration of taking disciplinary action against the responsible management officials, damages and

---

[2] Linzay was allowed to return on November 2, 2006.

attorneys fees (R. 475).

On January 26, 2007, Linzay was again disciplined for taking sick leave October 10-13, 2006 and November 6-7, 2006 and using that time to engage in other gainful employment. Though the disciplinary action began as a notice of removal, it was ultimately reduced to a 14 day suspension (R. 114).

The final two incidents which were cited as reasons for Linzay's removal occurred on May 25, 2007 and June 3, 2007.[3] On May 25, 2007 Linzay was instructed by his supervisor, Mike Riley, to report for work on May 26, 2007, at 10:00 p.m. Plaintiff was instructed three times, including a direct order to report, and each time he responded, with profanity, that he would not report. True to his word, Linzay failed to report.

On June 3, 2007, Lance Mahfouz overheard Linzay say "[t]hese black f*****s around here are as lazy as s**t. Danny, Paulette and Steve are worthless pieces of s**t. Tripp, Franklin, Sirilo and Murray are all lazy good for nothing f******s and Connie Hayes favors blacks and all she does it s**t you over." (Expletives omitted). (R. 102). On June 5, 2007, Mahfouz provided a written statement complaining about the incident to Supervisor Debra Mose (R. 111). Austin Williams also provided a written statement advising he could not make out every word, but he confirmed he

---

[3] At the MSPB hearing, Lance Mahfouz clarified that the conduct complained of actually occurred on June 4, 2007 at 3:00 a.m., not June 3, 2007 which was an unscheduled day for Linzay.

overheard Linzay using offensive racial comments (R. 109-110).

On June 19, 2007, Riley issued Linzay a Proposed Notice of Removal in which he was charged with two specifications. One being the incident on May 25, 2007 and his failure to report the following day and the other being the offensive statement made on June 3, 2007 (R. 102). The Notice of Proposed Removal stated that Linzay had ten days from receipt of the letter to answer in person, in writing or both to Sherrell Bozeman, Postmaster, Alexandria, Louisiana and that he had 14 days to file a grievance (R. 102).

On July 12, 2007, Linzay issued his only response through his union representative, Steven Taylor, who contended that the Notice of Proposed Removal did not meet just cause because it lacked any corrective measures and thus violated Article 16 of the National Agreement between the parties (R. 97). Postmaster Bozeman ultimately found the evidence fully supported the charges against Linzay and, considering the Douglas Factors, determined he should be removed effective July 31, 2007. At that time, Linzay was informed that he could either file a grievance within 14 days or appeal to the MSPB within thirty days of the effective date of his removal (R. 84-87).

On August 27, 2007, Linzay filed an appeal of his removal with the MSPB in which he alleged the removal was procedurally faulty under the terms of the collective bargaining agreement in that the acts occurred 8-12 days before management questioned him regarding

the incident; the work rules did not apply to him because he was a union steward conducting protected activity at the time of the incidents; and he was subjected to discrimination on the basis of his race, color, sex and prior EEO activity. Administrative Judge, Marie A. Malouf (AJ), conducted a hearing regarding Linzay's appeal on March 10 and 12, 2008 and on July 31, 2008, she issued an Initial Decision in which she found (1) Linzay's removal was proper and (2) he failed to establish a claim of discrimination (R. 313-352).

On November 5, 2008, after having sought and obtained two extensions of time, Linzay filed a Petition for Review with the Merit System Protection Board (the Board) (R. 354, 368-369, 376-512). On March 11, 2009, the Board issued a Final Decision concurring with the AJ's decision.

### The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure was recently amended to provide "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] A dispute regarding a material fact is "genuine" "if the evidence

---

[4] Rule 56 was amended effective December 1, 2010. The comments to the amendment indicate the intent was "to improve the procedures for presenting and deciding summary-judgment motions and to make procedures more consistent with those already used in most courts. The standard for granting summary judgment remains unchanged."

6

is such that a reasonable jury could return a verdict in favor of the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Washbur v. Harvey, 504 F.3d 505, 508 (2007).

Additionally, Local Rule 56.2W provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See Celotex, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. See Id. at 325; Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994); Austin v. Will-Burt Company, 361 F. 3d

862, (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, 37 F.3d at 1075.

All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its initial burden, summary judgment should be denied. Id.

## Jurisdiction

Judicial review of a mixed case appeal from the MSPB is provided by 5 U.S.C. §7703. Specifically, Section 7703(a)(1) gives "an employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit System Protection Board" the right to obtain judicial review of the order or decision. While judicial review is normally left exclusively to the Federal Circuit Court of Appeals, an appeal which involves both discrimination and non-discrimination claims can be heard by the district courts. §7703(b)(1); §7703(b)(2). Plaintiff's claims of discrimination are subject to trial *de novo* and non-discrimination claims are reviewed under the deferential standard applied by the Federal Circuit. 5 U.S.C. §7703(c).

## Title VII Claims

In the burden shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the plaintiff bears the initial burden of proving, by a preponderance of the evidence, that

8

he has established a *prima facie* case of discrimination. The burden then shifts to the defendant to show there was a legitimate non-discriminatory reason for the adverse employment action. To escape summary judgment, the plaintiff must then show a genuine issue as to whether the proffered reason was merely a pretext for discrimination. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000); Hall v. Gillman Inc., 81 F.3d 35, 37 (5th Cir. 1996); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996).

Race, Color & Sex Discrimination

In order to establish a *prima facie* case, a plaintiff must prove he: (1) is a member of a protected class; (2) was qualified for his position; (3) was subjected to an adverse employment action and (4) was replaced by someone outside the protected class or received disparate treatment. Ward v. Bechtel Corp., 102 F.3d 199, 202 (5th Cir. 1997). The parties do not dispute that the first three prongs of the test have been satisfied so the only question is whether Linzay was subjected to disparate treatment.

    a) Disparate Treatment

To establish a *prima facie* case of disparate treatment, the employee must show that a similarly situated employee was treated differently under circumstances 'nearly identical' to his. Wheeler v. BL Dev. Corp., 415 F.3d 399, 406 (5th Cir. 2005)(quoting Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995)). Bryant

9

v. Compass Group USA, Inc. 413 F.3d 471, 478 (5th Cir. 2005).

Nearly identical circumstances exist when:

> ...the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis.

Lee v. Kansas City Souther Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009)(internal citations omitted).

In the instant case, Linzay contends that two African American male employees who were similarly situated and engaged in nearly identical misconduct received more favorable treatment. Linzay contends mail handler, Joe McGaskey, told Connie Hayes that he was going to take his "f*****g break" after he was accused by her of wandering about the facility. McGaskey was sent home and received no disciplinary action other than an official discussion. Linzay also contends that mail handler, Danny McKraney, refused to work his overtime shift and was absent without leave. Linzay advised the only discipline McKraney received was a letter of warning for each incident. However, Linzay acknowledges that McKraney was ultimately removed for using profanity (R. 986-989).

Neither McGaskey nor McKraney were similarly situated. While

Linzay argues that the three men had the same supervisor, these common supervisors were not the ones who made the disciplinary determination for all three men. Postmaster Bozeman testified that she made the ultimate decision to remove Linzay but was not involved in determining what disciplinary action would be taken in the instances involving McGaskey or McKraney (R. 1154-57).

Linzay's consistent insubordination and refusal to obey a direct order as well as his persistent use of profanity, offensive racial comments and disciplinary history far exceed that of either McGaskey or McKraney. While McGaskey did use foul language when responding to Connie Hayes, there is no evidence that he continued to use profanity and/or ultimately refused to return to work. There is also nothing to suggest that this was anything other than an isolated incident; whereas, the May 25-26, 2007 incident was not the first in which Linzay was cited for using profanity in the workplace. With respect to McKraney's refusal to work an overtime shift, Postmaster Bozeman indicated that it was in light of an injury. Regardless, Linzay admitted McKraney was ultimately removed for using profanity in the workplace. Thus, he cannot argue that he and McKraney were not treated the same.

Because McGaskey and McKraney are not similarly situated, Linzay cannot and has not established he was subjected to disparate treatment.

b.) <u>Retaliation</u>

Linzay also argues he was retaliated against because he engaged in protected activity. In order to establish a *prima facie* case of retaliation, the employee must show he (1) engaged in protected activity; (2) was the subject of adverse employment action; and (3) a causal link between the protected activity and adverse action. <u>Gee v. Principi</u>, 289 F.3d 342, 345 (5th Cir. 2002) (citations omitted); <u>Shirley v. Chrysler First, Inc.</u> 970 F.2d 39 (5th Cir. 1992).

Linzay argues that the evidence of the managers' intense dislike for him evidences retaliation. Linzay is correct that the record shows there was no love lost between he and his managers. However, this animosity was discussed in two separate proceedings and both AJs found the Postal Service witnesses to be credible and that their dislike of Linzay did not result in retaliative motives or conduct.

Linzay also argues that his removal came "within months" of his filing an EEOC claim regarding the Postal Service's refusal to allow him to return to work until he received medical clearance proves he was retaliated against. In order to evidence a causal connection and establish a *prima facie* case, the temporal proximity between an employer's knowledge of protected activity and an adverse employment action must be "very close". <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74 (2001) (citing case where a

three or four month period was insufficient to establish a causal connection). More than five months passed between the time Linzay filed his EEOC charge and the time he was removed so the temporal proximity is not considered "very close". Standing alone, this instance would not constitute a causal connection nor a *prima facie* case. However, this is not the only alleged instance of retaliation. Linzay also complains that he was disciplined and ultimately removed within days of participating in an EEOC mediation as a union steward. The proximity of his participation in the mediation and ultimate removal is very close. This, coupled with the aforementioned instance does evidence a causal connection and a *prima facie* case of retaliation. However, this finding does not necessarily defeat the motion for summary judgment. The Postal Service may still articulate a non-discriminatory reason for the action and Linzay must prove that the reason is false and a pretext for discrimination.

c.) <u>Non-Discriminatory Reasons</u>

The Postal Service clearly states and sets forth evidence of a non-discriminatory reason for removal. Linzay was instructed on three separate occasions to report for duty and each time he responded, with profanity, that he would not follow the order. Linzay in fact did not report to work. In support, defendant notes both the testimony of Riley, who gave the direct order, and that of Debra Mose, Edward Tripp and Richard Grant who witnessed the

discussions. Additionally, the Postal Service advised it removed Linzay for offensive racial comments. These comments were the subject of complaints and verified by the testimony of Lance Mahfouz and Austin Williams at the hearing. As the Postal Service has carried its burden, it is up to Linzay to show that this reasoning is a sham or pretext for discrimination.

Linzay must set forth evidence to show that the reasons provided by the Postal Service were false and discrimination was the reason he was removed. He cannot refute the Postal Service's statement that he was removed for refusing a direct order and not showing up for work as he has failed to show that the incident did not occur or that he was subjected to disparate treatment.

With respect to the Postal Service's statement he was fired for using offensive racial comments, Linzay contends he never made the statements and that others at the Postal Service conspired against him and fabricated complaints in an effort to have him removed. The record contains not only complaints filed by Mahfouz and Williams and testimony confirming those complaints but it also contains several disciplinary actions involving instances where Linzay made offensive racial comments. Linzay's self serving statements and speculation do not raise a genuine issue of material fact. Accordingly, Linzay cannot disprove the Postal Service's non-discriminatory reasons for removal.

Accordingly, summary judgment should be granted with respect

to Linzay's discrimination and retaliation claims.

## Non-Discrimination Claims

In addition to the aforementioned claim of discrimination, Linzay sets forth several assignments of error with respect to the MPSB's decision:

1. The review board erred in failing to consider the EEOC AJ ruling dated September 29, 2008;

2. The AJ erred in determining there was no violation of the Contract and/or that such a violation was irrelevant in the determination;

3. The AJ and/or Board erred in determining that Linzay's disciplinary history warranted termination and/or that the penalty was not excessive;

4. The AJ erred in determining that there was no nexus between the retaliatory actions of management and removal;

5. The AJ erred in determining that the proffered employees were not similarly situated.

Review of the Board's decision is limited to determining whether it is:

1. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

2. obtained without procedures required by law, rule or regulation having been followed; or

3. unsupported by substantial evidence.

5 U.S.C. §7703(c). "The role of judicial review is only to ascertain if the Board has met the minimum standards set forth in the statute." United States Postal Service v. Gregory, 534 U.S. 1, 7 (2001).

New evidence

Linzay's first assignment of error is that the Board failed to consider the September 29, 2008 ruling from the EEOC as new evidence. 5 C.F.R. §1201.115(d) authorizes the Board to review the initial decision of an AJ if "(1) [n]ew and material evidence is available that, despite due diligence, was not available when the record closed; or (2) [t]he decision of the judge is based on an erroneous interpretation of statute or regulation." New evidence is not material unless it is of sufficient weight to warrant a different outcome. Wright v. U.S. Postal Service, 183 F.3d 1328 (C.A. Fed. 1999) citing Bucci v. Department of Educ., 42 M.S.P.R. 47, 55 (1989); cf. Azarkhish v. Office of Personnel Management, 915 F.2d 675 (C.A. Fed. 1990). See also Russo v. Veterans Administration, 2 M.S.P.B. 427, 3 M.S.P.R. 345, 349 (1980).

As pointed out by the Postal Service, the EEOC AJ found a violation of the Rehabilitation Act but did not find unlawful retaliation. The hearing before and decision of the MSPB did not involve any issues regarding Rehabilitation Act violations. Thus, the EEOC decision was not material to the Board's review. In declining review, the Board stated that a petition could be granted "only when significant new evidence is presented" and "[a]fter fully considering the filings in the appeal" it determined there was no new evidence. The use of the words "significant" and "fully considering" indicate that the Board in fact considered the EEOC

16

ruling but determined that it did not provide a basis for reversing the decision.

Improper consideration of discipline

Linzay makes much to do over the consideration of the 14 day suspension he received in January of 2007. This suspension, which was initially issued as a notice of removal, addressed the fact Linzay engaged in outside work during the time he was on sick leave. Linzay relies upon the reasoning expressed in the EEOC ruling that if the Postal Service had not prevented him from returning to work, they would not have contacted the school and learned he was engaged in other gainful employment. Therefore, because the disciplinary action was based upon improperly obtained information, it should not and cannot be relied upon in evaluating the Douglas Factors and determining he should be removed.

Linzay never amended his EEOC complaint to raise the issue of whether the 14 day suspension was valid. Thus, the EEOC AJ never addressed or determined it could not be referenced or relied upon in any ruling. There are no other decisions or settlement agreements invalidating it or precluding its use in determining disciplinary action. Thus, it remains in his file and can be considered. The reliance upon it is not improper and no reason exists to disturb the MSPB finding.

Violation of the contract

Linzay contends that the AJ incorrectly determined the

17

contract was not violated and, even if it was, a violation was not relevant. All Linzay has offered is his contention that the MOU clearly states an employee will not be required to work when he has requested leave and that once leave is approved, the Postal Service is precluded from requiring the person to work.

The AJ reviewed the MOU and found it was silent as to an employee's ability to circumvent working a day set forth on a posted schedule by requesting leave. She further noted that regardless of whether there was a violation of the contract or not, Linzay was issued a direct order which he was required to follow, even if he had a substantial reason to believe it was improper (R. 322-323).

The record, common sense and MSPB regulations support the AJ's finding and Linzay's contention is without merit.

Disciplinary history

Linzay contends that Bozeman and the AJ improperly relied upon two disciplinary actions in determining whether he should be removed from his position with the Postal Service. As previously addressed, Linzay's argument that it was improper to rely upon the January, 2007 14 day suspension is without merit. Likewise is his contention that the February, 2006 10 day suspension should not be considered.

In support, Linzay cites the settlement agreement which prevents the union and Postal Service from "cit[ing] or appeal[ing]

18

the settlement in or to any other grievance proceeding or any other forum such as MSPB, EEOC, etc." (R. 119). The terms of the settlement agreement indicate that it is the settlement that cannot be cited, not the disciplinary action. The settlement was a reduction in the number of days of the suspension, not a withdrawal of the disciplinary action altogether. Thus, it was not improper to rely upon either the 10 day or the 14 day suspension.

Causal connection and disparate treatment

The last two assignments of error have already been addressed and are not subject to review under the deferential standard.

### Conclusion

IT IS HEREBY RECOMMENDED that defendant's motion for summary judgement (Doc. 37) be GRANTED and the case be dismissed with prejudice.

### Objections

Under the provisions of 28 U.S.C. §636(b)(1(C) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDING, CONCLUSION, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN THE FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana this 13th day of May, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE